(105 So. 631)

No. 27349.

## STATE v. SULLIVAN.

(July 13, 1925.   Rehearing Denied Oct. 6, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Indictment and information** ⟜140(1)—**Plea of prescription properly·tried by court without jury.**

Motions to quash indictment, because, as more than year elapsed between commission of alleged incest and finding of indictment, offense was prescribed under ·Rev. St. § 986, as amended by Act No. 73 of 1898, *held* properly tried at defendant's request by court without jury.

2. **Criminal law** ⟜145½, New  Vol. 12A Key-No. Series—**Prescription statute relieves accused of being tried for offense.**

Rev. St. § 986, as amended by Act No. 73 of 1898, governing prescription of offenses, not only protects accused against conviction, but relieves him of ever being tried.

3. **Criminal law** ⟜1167(3, 5)—**Overruling motion to quash indictment and plea of prescription held without prejudice, accused having right to submit question of prescription to jury.**

Even if trial judge had no power to pass on motion to quash indictment or plea of prescription, under Rev. St. § 986, as amended by Act No. 73 of 1898, his overruling them did not prejudice accused's rights,· since latter could submit question of prescription to jury.

4. **Criminal law** ⟜149—**Plea of prescription properly overruled.**

In view of Rev. St. § 986, as amended by Act No. 73 of 1898, as less than a year intervened between time incest was made known to public officer having power to prosecute, and finding of indictment, plea of prescription was properly overruled.

5. **Indictment and information** ⟜137(3)—**Request by committee of ladies that grand jury investigate charge of incest held insufficient ground for quashing indictment therefor.**

Request by committee of ladies to grand jury during recess to investigate charge of incest against defendant, and if facts justified it to take action thereon, *held* insufficient ground for quashing indictment.

6. **Criminal law** ⟜1111(1)—**Facts, as stated by trial judge, control in absence of evidence from record.**

Facts shown on trial of motion to quash indictment, as stated by trial judge, control in absence of evidence. from record.

7. **Witnesses** ⟜41—**Former insanity not disqualification, if witness had proper understanding at time of examination.**

Fact that witness for prosecution was pronounced insane and sent to asylum under court order 13 months before she was called as a witness did not render her incompetent, if she had proper understanding at time she was called and examined.

8. **Witnesses** ⟜41—**Discharge from insane asylum creates presumption that sanity was regained.**

Fact that witness was discharged from insane asylum, after having been received therein, creates presumption that she had regained her sanity.

9. **Criminal  law** ⟜1170½(1)—**Permitting prosecutrix to tell jury what she knew about case held not prejudicial to accused.**

In prosecution for incest, permitting prosecutrix, when examined as witness, to tell jury what she knew about the case, without specific interrogations, *held* without prejudice to accused.

10. **Criminal law** ⟜1169(5)—**Instruction to disregard objectionable statement of prosecutrix as witness held to have desired effect.**

In prosecution for incest, on objection to statement of prosecutrix as witness that defendant treated her sister that way too, instruction to jury to disregard it and to confine themselves to evidence of crime against prosecutrix *held* to have had desired effect.

**11. Witnesses ⚖240(4)—Question held not leading.**

In prosecution for incest, question of district attorney to prosecutrix whether "when he lay down did any part of his body touch you" held not leading.

**12. Incest ⚖13—Evidence of result of examination of prosecutrix by physician nearly year after alleged incest held admissible.**

In prosecution for incest, where physician examined prosecutrix nearly a year after alleged offense, such fact did not render his evidence of result of examination inadmissible, weight thereof being for jury.

**13. Criminal law ⚖683(1)—Objection to question because testimony to be elicited was not in rebuttal properly overruled.**

In prosecution for incest, where defendant showed testimony of prosecutrix was influenced by her mother and, to rebut inference, state proved that prosecutrix was taken from her mother and placed with welfare society in charge of witness, objection to question to witness, as to time when she first received notice of pendency of charge, held properly overruled, testimony elicited being in rebuttal to show that mother had no access to daughter and therefore could not have influenced her.

**14. Criminal law ⚖1036(2), 1090(8)—In absence of objection, and bill of exceptions action of trial judge in asking question not reviewed.**

In absence of objection to questions propounded by trial judge to witness and bill of exceptions to ruling thereon, Supreme Court cannot review action of judge.

**15. Criminal law ⚖713 — Reading fragment of speech of defendant's counsel, when district attorney in state case, held not to have injured defendant, nor detracted from his counsel's argument.**

In prosecution for incest, reading by district attorney of fragment of speech of defendant's counsel, made when he was district attorney in state case, which was pertinent as argument in any criminal case, held not to have injured defendant, nor to have detracted from his counsel's argument to jury.

**16. Criminal law ⚖814(7)—Charge on prescription not justified under evidence.**

Where indictment for incest negatived prescription and burden was on defendant to show offense was made known to officer 12 months or more prior to finding of bill, refusal to charge on effect of prescription held not error in absence of evidence thereon.

**17. Indictment and information ⚖87(2)—Indictment held to negative prescription; "public officer."**

Indictment alleging that offense had never been brought to attention of public officer until December 1, 1924, held to negative prescription under Rev. St. § 986, as amended by Act No. 73 of 1898; "public officer" as used in indictment being broader than words of statute, "public officer having power to direct investigation or prosecution," and inclusive of latter.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

**18. Indictment and information ⚖87(2)—Indictment negativing prescription held sufficient; "made known to," "brought to the attention of."**

Rev. St. § 986, as amended by Act No. 73 of 1898, in providing for prescription of offense uses expression "made known to" in referring to bringing offense to attention of public officer. Held, that indictment using expression "brought to the attention of" in negativing prescription was sufficient, one expression being equivalent of the other.

Appeal from Twenty-First Judicial District Court, Parish of St. Helena; Columbus Reid, Judge.

Henry Sullivan was convicted of incest, and he appeals. Affirmed.

Matthew J. Allen, of Amite, for appellant.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., Amos L. Ponder, Dist. Atty., of Amite, and E. R. Schowalter, Asst. Atty. Gen., for the State.

OVERTON, J. The grand jury in and for the parish of St. Helena, on March 6, 1925, returned a bill of indictment against defendant, charging him with having committed incest, in January, 1924, with his daughter, Mary Sullivan, a child 14 years of age. It is alleged in the bill that the offense was not made known to a public officer until December 1, 1924.

[1] Defendant filed two motions to quash this indictment. The first one is based on the ground that, as more than a year elapsed between the alleged commission of the offense and the finding of the indictment, the offense is prescribed. The court tried this motion without a jury, and overruled it. Defendant excepted to the action of the court in trying the motion without a jury, and in overruling it. The judge says in his statement, attached to the bill, that counsel made no request to submit the motion to a jury; that, in fact, the request was for the court to take the evidence and determine the issue before the jury was impaneled; that this was done; and that the evidence taken, which was uncontradicted, showed that the first presentation of the matter to an officer was to the grand jury, which was either in October, 1924, or in December of that year.

The statute governing the prescription of offenses, in so far as it is necessary to quote it, reads:

"No person shall be *prosecuted, tried* or *punished* for any offense, willful murder, arson, robbery, forgery and counterfeiting excepted, unless the indictment or presentment for the same be found or exhibited within one year next after the offense shall have been made known to a public officer having the power to direct the investigation or prosecution. * * * Nothing herein contained shall extend to any person absconding or fleeing from justice. * * *" (Italics ours.) Revised Statutes, § 986, as amended by Act No. 73 of 1898.

[2] It has been held that, where a defendant files a plea of prescription to the offense charged against him, before the jury is impaneled, the plea may properly be referred by the court to the merits. State v. Strong, 39 La. Ann. 1081, 3 So. 266; State v. West, 105 La. 639, 30 So. 119. On the other hand, the statute reads that the accused shall not be "prosecuted, tried or punished for any offense," save those excepted, unless the indictment or presentment for the same be found or exhibited within the time specified in the statute. It is clear, therefore, that the statute not only protects the accused against conviction for any such offense, but relieves him even of being tried therefor.

The protection accorded the accused against being forced to trial for an offense is a valuable right. The only way by which he may avail himself of that protection is, obviously, by having the question as to whether or not he shall be tried for it disposed of before he is brought to trial. We see no reason why he can not do this before the judge, without a jury, by means of a motion to quash. In passing upon such motion, the only question that the judge determines, or can determine, is whether the accused should be tried on the charge preferred against him, and hence, whether the indictment should be quashed. If the judge overrules the motion, his action in doing so does not preclude the accused from submitting the question of prescription to the jury, on the trial of the case, to the end that they may determine whether the plea is well founded, in deciding whether there should be a conviction, for the statute contemplates that, not only shall the accused not be brought to trial, if the offense be prescribed, but also that if he is brought to trial, he shall not be convicted. This last phase of the plea can be determined only by the jury impaneled to decide the case, and in deciding the case upon its merits, for that phase of the plea pertains to the merits. See State v. Victor, 36 La. Ann. 978, and State v. Foster, 7 La. Ann. 255. Therefore, in our view, the judge did not err in passing on the motion, for he was called upon to determine whether the accused should be brought to trial, and hence, whether the indictment should be quashed. In fact, the defendant requested that the judge pass upon the motion.

[3] Even if the judge had not the power to pass upon the motion or plea, still, his overruling it would not have prejudiced the

rights of the accused, for whether the judge had power to pass upon the motion or not, in either event, the accused had the right to submit the question of prescription, embodied in the motion, to the jury.

[4] As less than a year intervened between the time the offense was made known to a public officer having the power to direct an investigation into and to prosecute the offense and the finding of the bill of indictment, the motion, embodying the plea of prescription, was properly overruled, and the accused was, therefore, properly put upon his trial.

[5] The second motion to quash the indictment, mentioned above, is based on the following ground, to wit:

"That while the grand jury of the parish of St. Helena, state of Louisiana, was engaged in the deliberation of this case, a committee composed of several ladies (prominent in civic and reform movements and in politics) were admitted into the grand jury room, in a body, and that one or more of these ladies made talks, or speeches, to the grand jury, insisting upon and urging them to find a bill against this accused based on a charge of incest; and that mover believes, and so alleges, that they did influence the grand jury in returning this indictment."

The motion was tried and overruled by the court. The trial judge says in his statement, attached to the bill of exception, taken to the ruling, that:

"The facts above stated (referring to those stated in the bill of exception) are not true in stating or insinuating that these ladies were admitted to the grand jury while it was in session. The facts, according to the evidence, are that these ladies (who are not prominent in politics) requested permission to talk to the members of the grand jury. That body took a recess and with its doors open heard a request from these ladies that this matter be investigated and if the facts justified it, action be taken. There was no effort of any kind to overawe or improperly influence it, and I see no harm in any citizens in talking matters over with members of grand juries, in fact, most prosecutions originate in that manner."

[6] If the facts justified the conclusion that these ladies went in a body to the grand jury, and, by speech making, attempted to influence them to return a true bill in this case, we should have no hesitancy in quashing the bill. However, the evidence offered, under the motion, is not in the record, and the facts shown on the trial of the motion, as stated by the trial judge, which are controlling, in the absence of the evidence itself from the record, do not justify that conclusion. All that these ladies did, as appears from the statement of the judge, was to request permission to see the members of the grand jury. The grand jury recessed in order to receive them, and, upon the ladies being received, they requested the grand jurors to investigate the case, and, if the facts justified it, to take action thereon. We see no reason, under these facts, to quash the bill. Any person has a right to go before the grand jury and prefer a charge against another. State v. Stewart, 45 La. Ann. 1164, 14 So. 143. Because, in this instance, several went to request an investigation of the case, and did make the request, does not alter the rule.

[7] During the progress of the trial, the state called to the witness stand Addie Sullivan, the mother of the prosecuting witness and wife of the defendant. The defendant objected to her being sworn on the ground that she was not a competent witness for the reason that she was interdicted in April, 1924, which was a little over a year before she was called as a witness, and was still an interdict at the time she was called. The court overruled the objection, and defendant excepted.

The evidence discloses that in April, 1924, the witness was admitted, under an order of court, into the insane asylum at Jackson, La., and the judge says, in his statement of facts, attached to the bill, that she was discharged from that institution about 60 days later. He

further says that her testimony on the stand showed conclusively that she was a competent witness.

[8] The law provides that a competent witness, in either a civil or criminal case, is a person of proper understanding. Act 157 of 1916. The fact that the witness was pronounced insane and sent to an insane asylum, under an order of court, some 13 months before she was called as a witness, does not render her incompetent, provided she was a person of proper understanding at the time she was called and examined. The fact that she was discharged from the asylum, after having been received therein, creates a presumption that she had regained her sanity; and the fact that the judge, who heard her testify, says, in effect, that she was a person of proper understanding, at the time she was called and examined as a witness, satisfies us that she was. Hence, our conclusion is that the bill should be overruled.

[9] While the prosecuting witness, Mary Sullivan, was on the witness stand, the district attorney, after asking her a few preliminary questions, made the following request of her: "Mary, turn to the jury and tell them what you know about this case." The defendant objected to this manner of examining the witness, on the ground that it was improper, and insisted that the district attorney should ask specific questions instead. The court overruled the objection. The witness, after telling the jury, in response to the district attorney's request, of defendant's conduct towards her, said: "He treated my sister that way too," meaning that he had committed incest with her sister also. Defendant objected to the statement of the witness, relative to the manner in which he had treated her sister. The court immediately instructed the jury to disregard the statement, and to confine themselves, in their deliberations, solely to evidence of crime against the prosecuting witness.

Such requests as the one made in this instance, that the witness tell the jury what she knew about the case, are not uncommonly made of witnesses in the trial of criminal cases. Speaking of them in a recent case, this court said:

"The better practice is to direct the witness' attention, in a more definite manner, to the points about which his testimony is sought; or the court should at least instruct him not to repeat any hearsay matter which was not immediately connected with the facts and circumstances forming part of the res gestæ." State v. Allemand, 153 La. 741, 96 So. 562.

[10] In the case cited, the court found that it did not appear that anything prejudicial to the accused was brought out by the method of examination used, and overruled the bill. In the case at bar, the judge promptly instructed the jury to disregard the objectionable statement. While instructions to the jury are not always sufficient, in such instances, to accomplish their purpose, yet in the present instance, we feel abundantly satisfied that the positive and prompt instruction of the court to the jury, to disregard the statement, was sufficient to accomplish its purpose, and had the desired effect. Entertaining this view, we are of the opinion that the bill under consideration should be overruled.

[11] While examining Mary Sullivan, the prosecuting witness, the district attorney asked her the following question: "When he lay down did any part of his body touch you?" Defendant objected to the question on the ground that it was leading. In our view the question was not leading.

[12] In the course of the examination of Dr. LeNoir, a practicing physician, the district attorney elicited from him, on his examination in chief, that he made an examination of Mary Sullivan, the prosecuting witness, on December 8, 1924, which was nearly a year after the offense is alleged to have

been committed. Having elicited from the witness the fact that an examination of Mary Sullivan had been made by him, and the date thereof, the witness was then asked by the district attorney to state the result of the examination. To this question the defendant interposed the objection that the examination was not made until nearly a year after the alleged commission of the crime, and hence was made at too remote a time to be admissible. In our opinion the objection is not well founded. The time that elapsed between the date of the commission of the offense and the date of the examination was sufficient to affect the weight to be attached to the result of the examination, as a circumstance affecting defendant, but did not render evidence of that result inadmissible. See 3 Chamberlayne on the Modern Law of Evidence, § 1747.

[13] While Mrs. Green, a witness for the state, was testifying in rebuttal, the district attorney asked her the following question: "When did you receive your first official notice of the pendency of this charge?" Defendant objected to this question on the ground that the evidence sought to be elicited thereby was not in rebuttal. During the progress of the examination, the trial judge asked the witness the following question: "What communication, if any, has this child, Mary Sullivan, had with her mother since she was committed to your care?" Defendant also objected to this question on the grounds that the evidence sought to be elicited by it was not in rebuttal; that defendant had not shown that Mary Sullivan had communicated with her mother after she was taken away, or had ever attempted to do so; and that the testimony was irrelevant and inadmissible. These objections were overruled by the court.

The foregoing objections are found in two bills of exceptions. In his statement, attached to one of them, the judge says, in substance, that defendant attempted to show that the evidence of Mary Sullivan had been influenced by her mother, and that in order to establish that no such influence had been brought to bear, the state proved, in rebuttal, that the court had taken Mary Sullivan from both of her parents, and placed her in charge of the Child's Welfare Society, of which Mrs. Green, the witness to whom the questions were propounded, was in charge, and that the evidence sought to be elicited by the questions was to show that the mother did not have access to her daughter, and hence, we infer, could not have influenced her daughter's evidence.

The first question, shown in these bills, was evidently asked as a preliminary question, in the state's effort to show that the mother did not have an opportunity to influence her daughter, and the answer merely tended to fix a date. The second question was obviously asked to show whether or not the mother had had any communication with her child, and the answer was that she had had none. The evidence sought to be and actually elicited by the questions was relevant, and was admissible as rebuttal evidence.

[14] Defendant complains in his brief that the second question, mentioned above, was propounded by the judge, and he urges that for that reason the verdict should be annulled and a new trial granted him. However, defendant urged no objection, at the time the question was propounded, to its being asked by the judge himself. In the absence of such an objection and of a bill of exception to the ruling of the court thereon, we are unable to review the action of the judge in asking the question. Marr's Criminal Jurisprudence (2d Ed.) § 728, p. 1125.

[15] During the course of his argument, the district attorney announced to the jury that he would read to them the speech of counsel for the defendant herein, made by him, when he was district attorney, in the

case of State v. Grantham, 150 La. 621, 91 So. 66. The defendant, through his counsel, objected to the reading of the speech to the jury, on the ground that to do so would prejudice the minds of the jury against him, and would destroy or weaken whatever effect the argument of his counsel might have on their minds, and on the further ground that while the speech in the Grantham Case was pertinent to the issue therein it was not pertinent to the issue in this case. The court overruled the objection, and permitted the speech to be read.

The speech, which in fact is only a fragment from the argument of counsel for defendant herein, made in the Grantham Case, when he was district attorney, will be found on pages 623 and 624 of volume 150 of the Louisiana Reports, from which it was read to the jury. The fragment of the argument read is as pertinent, as argument, in one criminal case as it is in another. In our view, there is nothing in it that could have injured defendant; nor do we think that the reading of it to the jury, as an expression of the views of counsel for defendant, when counsel was district attorney, could have had the effect of detracting from his argument to the jury in this case. In our opinion, the bill is without merit.

[16] The defendant, at the close of the trial, requested the court to give the following special charges to the jury, to wit:

"(1) That no person shall be prosecuted, tried or punished for any offense unless the indictment or presentment for the same be found or exhibited within the year next after the offense shall have been made known to a public officer having the power to direct a public prosecution.

"(2) That judges, justices of the peace, district attorneys, the sheriffs and deputy sheriffs and grand jurors are officers having the power to direct a prosecution in a criminal case."

The court refused to give the charges, and, in the per curiam attached to the bill, says:

"No evidence at all was offered to the jury on the question of prescription, and it was not mentioned in argument. As the indictment properly negatived prescription, and no evidence was offered before the jury the court was under no obligation to charge the jury on this point."

As we said, in passing on the first bill of exceptions herein, defendant, notwithstanding the fact that the court had overruled his plea of prescription, in limine, had the right to submit the question of prescription to the jury, under the plea of not guilty, on the trial of the case on the merits, for if the offense was prescribed, defendant could not be lawfully convicted.

As the indictment negatived prescription by alleging that the offense was not made known to a public officer, until a date falling within 12 months prior to the finding of the bill, the burden was on defendant to show that the offense had been made known 12 months, or more, prior to the finding of the bill, to an officer, who, under the statute, was authorized to direct an investigation into, or a prosecution of, the offense, and hence, that the offense had prescribed. State v. Posey, 157 La. 55, 101 So. 869, overruling State v. Bischoff, 146 La. 748, 84 So. 141, and State v. Richard, 149 La. 574, 89 So. 697, and reinstating State v. Barrow, 31 La. Ann. 694, and State v. Barfield, 36 La. Ann. 89. Until there was some evidence before the jury tending to show that the offense had prescribed, prescription was not an issue before that body. As there was no such evidence before the jury, the court was not called upon to charge them relative to prescription. Therefore, the court did not err in refusing to give the special charges, on that subject, requested. See State v. Suire, 142 La. 101, 76 So. 254. To require the court to charge on prescription, it is not sufficient that there is evidence in the case showing that the offense was committed 12 months or more prior to the finding of the bill, but to require the court to so charge,

there must be, in addition, some evidence before the jury, tending to show that the offense was made known to a competent officer 12 months or more before the finding of the bill. In this case, the trial judge advises us, in effect, that there was no such evidence before the jury. As there was none, he did not err in refusing to give the special charges requested.

[17] Defendant filed a motion in arrest of judgment, based on the ground that the conviction is invalid, because the indictment does not legally negative prescription. The indictment, as we said in stating the first bill, alleges that "this offense (referring to the offense charged) has never been brought to the attention of any public officer until December 1, 1924." The statute, relative to prescription (section 986 of the Revised Statutes, as amended by Act No. 73 of 1898, quoted above), instead of using the words "public officer" alone, without qualification, as used in the indictment, uses the words "public officer having the power to direct the investigation or prosecution." However, the expression "public officer," used in the indictment, is broader than the expression used in the statute, and necessarily includes the latter. In other words, the expression "public officer" necessarily includes a "public officer having the power to direct the investigation or prosecution." Hence, the bill of indictment is sufficient in that respect. See State v. Hall, Man. Unrep. Cas. 240.

[18] The statute, in providing for the prescription of offenses, also uses the expression "made known to" in referring to the bringing of the offense to the attention of a public officer, whereas the indictment uses the expression "brought to the attention of" in negativing prescription. One expression, however, is the equivalent of the other, and hence the indictment is sufficient in that respect also. The motion in arrest was, therefore, properly overruled.

Defendant also reserved a bill of exceptions to the refusal of the judge to grant him a new trial. All of the grounds set out therein, subject to review by this court, have been considered in passing on the foregoing bills of exceptions, save one ground. That ground is that a committee of ladies, before and at the time of the trial, attempted, in the courtroom, to influence the jurors, before they were impaneled, and the jury after they were impaneled. There is no evidence in the record to sustain this ground, and the judge says in his statement, attached to the bill, that the ground is without foundation.

For the reasons assigned, the judgment appealed from is affirmed.