427 So.2d 93 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Leo METOYER, Defendant-Appellant.
No. CR82-850.
Court of Appeal of Louisiana, Third Circuit.
February 17, 1983.
Charles W. Seaman, Natchitoches, for defendant-appellant.
Michael Bonnette, Asst. Dist. Atty., Natchitoches, for plaintiff-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
*94 DOUCET, Judge.

MOTION TO DISMISS
Defendant, Leo Metoyer, was originally charged with second degree murder; however, on September 13,1982, the charge was amended to manslaughter, to which the defendant entered a plea of guilty. The defendant was sentenced to five years at hard labor on November 4, 1982.
This appeal was filed in this court on December 30, 1982, and on January 4,1983, an order to show cause was issued ordering defendant to show on or before January 18, 1983, why his appeal should not be dismissed as having been untimely perfected under LSA-C.Cr.P. art. 914.
This article requires:
A motion for an appeal may be made orally in open court or by filing a written motion with the clerk. The motion must be made no later than five days after the rendition of the judgment or ruling from which the appeal is taken. The motion shall be entered in the minutes of the court.
Defendant was sentenced on November 4, 1982; however, he did not move for an appeal of his conviction until November 12, 1982. This time delay is beyond the five (5) day requirement established by the Legislature in article 914.[1] Thus, the appeal has not met the requirement of this article.
In reply to the order to show cause, the defendant presents two arguments: that the wording of article 914 (i.e., "The motion must be made no later than five days ...") is not mandatory but is permissive as defined in LSA-C.Cr.P. art. 4, and that the time limit for this appeal should be governed by article 914 as it existed at the time of the commission of the offense, and not as it existed at the time of defendant's sentencing.
Defendant's first argument, that the word "must" as used in article 914 is permissive rather than mandatory, is without merit. In State v. Delatte, 372 So.2d 1200 (La.1979), the defendant did not appeal his amended sentence imposed on August 14, 1978, until October 4, 1978, and the Supreme Court ruled it untimely filed. In State v. Veazey, 337 So.2d 1163 (La.1976), the state contended that the time for appealing a ruling, such as one ordering the quashing of an indictment, should commence running from the date of receipt of notice thereof. Responding to this argument, the court said: "We are asked to engraft these rules borrowed from the Code of Civil Procedure (articles omitted), onto the clear statutory language of Code Crim.P. art. 914. This we cannot do .... In the absence of statutory authority to the contrary, we will continue to follow the directive of article 914 that motions for appeal must be made no later than fifteen days after the rendition of the judgment or ruling from which the appeal is taken." (emphasis supplied). The jurisprudence of this state, as reflected above, interprets the time delay in which to file a motion for appeal as a mandatory time limit, beyond which an appeal is considered as untimely filed.
In defendant's second argument he contends that LSA-La. Const. art. I § 23 will be violated if the amended article 914 is applied to defendant's case, rather than applying article 914 as it existed at the time of the offense. The constitutional provision states:
No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.
By definition, an ex post facto law is one which is passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed. State v. Sepulvado, 342 So.2d 630 (La.1977). In Sepulvado the court commented at length upon the application and affect of ex post facto laws in criminal cases, stating:
*95 Certain criteria for determining if a law is ex post facto have been established. The ex post facto prohibition comes into effect when a law makes an act criminal which was innocent when done and punishes such action; or aggravates a crime or makes it greater than when committed; or changes the punishment and inflicts a greater punishment than the law in effect when the crime was committed; or alters the rules of evidence to receive less or different testimony that the law required at the time the offense was committed in order to convict. Calder v. Bull, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). A fifth category holds that any law is considered ex post facto which is enacted after the offense was committed and which alters the situation of the accused to his disadvantage. Kring v. Missouri, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1882); Payne v. Nash, 327 F.2d 197 (8th Cir.1964); State v. Ferrie, 243 La. 416,144 So.2d 380 (1962); 16A C.J.S. Constitutional Law §§ 440-46 (1956).
The problem involved in deciding whether a procedural law is ex post facto was broadly stated by Mr. Justice Stone in Beazell v. Ohio, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925);
"Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation... and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance".
As the issue is viewed in the context of this case the Court must decide whether the statute materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offense was committed. At the same time, it must be recognized that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offense for which he is charged. People v. Ward, 50 Cal.2d 702, 328 P.2d 777 (1958), cert. denied, 359 U.S. 945, 79 S.Ct. 730, 3 L.Ed.2d 678 (1959); Todd v. State, 228 Ga. 746, 187 S.E.2d 831 (1972).
In People v. Adams, 274 N.Y. 447, 9 N.E.2d 46 (1937) the New York Court of Appeals was presented with an identical situation. There defendants argued that a new law which permitted several counts within one indictment was an ex post facto law, in that the law in effect at the time of the commission of the offense required that each count appear on a separate indictment. The defendants asserted that they were materially disadvantaged by the cumulative effect of more than one count in the indictment.
Nevertheless, after noting the general definitions of ex post facto laws, the court concluded that:

"The changes involved in the case at bar were merely procedural. They do not make criminal any acts which previously were innocent; nor do they aggravate a crime and make it greater than it was when committed. Nor do they inflict a greater punishment; nor do they provide for conviction on less or different testimony or create presumptions against the defendant. The relators contend that a law is ex post facto if it makes or may make changes which are to the substantial disadvantage of the accused. Perhaps a statute by reason of working a substantial detriment to the accused may be deemed ex post facto although it does not come within the classification outlined in Calder v. Bull [3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798)], but that the statutes involved herein are not of such a nature cannot be doubted."

In the case at bar the indictment was filed after the effective date of the amendment. Defendant was charged with the killing of a human being when *96 the offender has a specific intent to kill or to inflict great bodily harm upon more than one person. La.Rev.Stat. 14:30(4). Thus, even under the prohibition against more than one count in an indictment, it would have been necessary to allege that the accused had the intent to kill another person, or did in fact do so. Charging the offense in two counts is essentially the same. In either case neither the substantive nor procedural rights of defendant would be affected. His defense would be the same. The rules of evidence are not changed and the penalty remains the same. State v. James, 339 So.2d 741 (La. 1976). (emphasis supplied)
In the instant case, the amendment to article 914 does not deprive the defendant of his constitutional right to an appeal; rather, an amendment changing the time delays in which to file a motion for appeal is a procedural change which does not affect the accused's substantive rights. Therefore, this appeal filed beyond the five day time limit required by article 914 is untimely and is dismissed.
NOTES
[1] Acts 1982 No. 143 amended LSA-C.Cr.P. art. 914. Prior to the amendment, article 914 imposed a fifteen day requirement for filing a motion for appeal. The effective date of the amendment to article 914 was September 10, 1982.